UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

HILLARY K.,                                    Case No. 19-CV-2965 (PJS/KMM)

        Petitioner,

v.                                                          ORDER

DHS-ICE; CHIEF COUNSEL;
ATTORNEY GENERAL; SHERBURNE
COUNTY SHERIFF,

        Respondents.

---

Hillary K., pro se.

Gregory G. Brooker, UNITED STATES ATTORNEY'S OFFICE, for respondents.

This matter is before the Court on two motions filed by petitioner Hillary K., both of which challenge the decision of Immigration and Customs Enforcement ("ICE") to remove Hillary from the United States. On February 18, 2020, Hillary filed an "emergency motion to halt deportation." ECF No. 14. The Court temporarily stayed Hillary's removal in an order dated February 19, 2020, and requested additional briefing from the parties. ECF Nos. 18, 19. On April 7, 2020, Hillary filed a "motion to nullify [the] voluntary departure order of the Immigration Judge." ECF No. 27. For the reasons that follow, the Court denies both of Hillary's motions and vacates its stay.

# I.  BACKGROUND

Hillary is a citizen of Kenya.  ECF No. 9-1 at 4.  He last entered the United States on February 9, 2013 on an F-1 nonimmigrant student visa.  *Id.*  Hillary graduated from nursing school on May 5, 2014, after which he no longer was authorized to remain in the United States under his F-1 visa.  ECF No. 25-5 at 2; ECF No. 25-4 at 66-67; *see* 8 C.F.R. § 214.2(f)(5) (the status of an F-1 student ends when the student is no longer pursuing a "full course of study").  Hillary nevertheless remained in the United States.  ICE arrested Hillary at his home in North Dakota on November 5, 2018, and he has been in detention ever since.  *See* ECF No. 9-1 at 10-11; ECF No. 25 ¶ 5.

Hillary and his current wife married on January 3, 2019, a couple of months after Hillary had been taken into custody.  ECF No. 1 at 2; ECF No. 25-4 at 87.  Hillary's wife (a U.S. citizen) then filed an I-130 petition on Hillary's behalf.[1]  The Immigration Judge continued Hillary's individual hearing several times in hopes that United States Citizenship and Immigration Service ("USCIS") would act on the I-130 petition, which, in turn, would allow the Immigration Judge to consider Hillary's eligibility for adjustment of status based on his marriage to a U.S. citizen.[2]  ECF No. 25-4 at 18-19, 22-

---

[1]Hillary states that the I-130 petition was filed on January 23, 2019.  ECF No. 1 at 2.  Hillary's attorney told the Immigration Judge that the I-130 was mailed on January 18, 2019.  ECF No. 25-4 at 39.

[2]Adjustment of status based on marriage to a U.S. citizen is a "two-step process."
(continued...)

29, 34-36, 39-43, 46-48.  Unfortunately for Hillary, however, USCIS has not yet acted on his wife's I-130 petition.

On June 7, 2019, after Hillary's case had been continued for more than six months, the Immigration Judge declined to grant further continuances and proceeded with Hillary's individual merits hearing.  *See* ECF No. 25-4 at 47, 50.  Hillary conceded his removability based on his failure to maintain or comply with the conditions of his F-1 student visa.  *See* 8 U.S.C. § 1227(a)(1)(C)(i); ECF No. 25-4 at 9-10, 95; ECF No. 25-5 at 2.  The Immigration Judge denied Hillary's request for cancellation of removal, but granted his request for voluntary departure.  ECF No. 9-1 at 24.  The Immigration Judge specified, however, that voluntary departure was granted "under safeguards," meaning that Hillary would remain in ICE custody until he returned to Kenya.  *Id*.  As required by 8 C.F.R. § 1240.26(d), the Immigration Judge also entered an alternate order of removal, which would become effective if Hillary failed to voluntarily depart within the required time frame.  *Id*.

---

[2](...continued)
*In re Hashmi*, 24 I. & N. Dec. 785, 789 (BIA 2009).  First, the U.S. citizen files an I-130 petition with USCIS on behalf of his or her spouse.  *Id*.  The U.S. citizen "must establish his or her own United States citizenship . . . and the bona fides of the claimed relationship to the beneficiary and must also show that the family relationship meets the statutory requirements."  *Id*. (citing 8 C.F.R. §§ 204.1-204.2).  Once the I-130 is approved, the non-U.S. citizen spouse may apply for adjustment of status under 8 U.S.C. § 1255(a).  Because the I-130 petition was still pending before USCIS at the time of Hillary's individual hearing, the Immigration Judge could not consider Hillary's eligibility for adjustment of status based on his marriage to a U.S. citizen.

The Board of Immigration Appeals ("BIA") affirmed the Immigration Judge's decision on October 31, 2019.  ECF No. 9-1 at 27-31.  The BIA informed Hillary that he had 60 days to voluntarily depart, and warned that failure to do so would subject him to a civil penalty and ineligibility for many forms of immigration relief for 10 years.  *Id.* at 30.  The 60-day period ended on December 30, 2019, by which time Hillary had not yet departed.  ECF No. 25 ¶¶ 20-26.  Hillary's alternate order of removal then became effective, and immigration officials began arranging for his removal.

Hillary filed a petition for a writ of habeas corpus in this Court on November 22, 2019, challenging the length of his detention in ICE custody.  ECF No. 1.  Immigration officials obtained a travel document for Hillary on January 21, 2020, prompting Hillary to file an "emergency motion to halt deportation" in his ongoing habeas proceedings. ECF No. 14; ECF No. 16 ¶ 12.  The Court temporarily granted Hillary's motion on February 19, 2020 and requested additional briefing from the parties.  ECF Nos. 18, 19. The Court's concern was that the record was unclear whether Hillary was in fact under a final order of removal.  The alternate order of removal entered by the Immigration Judge took effect only if Hillary failed to voluntarily depart within the required time frame.  ECF No. 9-1 at 24.  An alien has not "voluntarily fail[ed] to depart" within the meaning of 8 U.S.C. § 1229c(d) if the alien, through no fault of his own, is physically unable to depart within the time granted.  *See In re Zmijewska*, 24 I. & N. Dec. 87, 94 (BIA

2007). Hillary had been continuously detained during the entire 60 days during which he was permitted to voluntarily depart. Thus, it was not clear to the Court whether the condition to entry of the final order of removal had been met.

Based on the government's comprehensive brief and the Court's own research, the Court is now satisfied that Hillary is subject to a final order of removal. Hillary had an opportunity to voluntarily depart to Kenya, but failed to do so within 60 days of the BIA's October 31, 2019 order. As a result, the alternate order of removal entered by the Immigration Judge became subject to execution on December 31, 2019. *See* 8 C.F.R. § 1241.1(f).

Hillary argues that notwithstanding his final order of removal, the Court should enjoin the government from removing him. Specifically, Hillary argues that it is "premature" to remove him while he is "in the middle of a federal court proceeding," and that his family will suffer hardship if he is deported. ECF No. 14. In support of his motion seeking to "nullify" the voluntary departure order issued by the Immigration Judge, Hillary further argues that the Court should enjoin his removal because: (1) the I-130 petition that his wife filed on his behalf is still pending before USCIS, (2) the Notice to Appear that was served on him did not comply with statutory requirements, and (3) he was illegally arrested by ICE. ECF Nos. 27, 28.

## II.  ANALYSIS

Pursuant to 8 U.S.C. § 1252, district courts lack subject-matter jurisdiction over claims that directly or indirectly challenge removal orders.  Under § 1252(a)(5), Hillary's "sole and exclusive means for judicial review of an order of removal" is to file a "petition for review" with "an appropriate court of appeals."  *See Skurtu v. Mukasey*, 552 F.3d 651, 655 (8th Cir. 2008) ("The REAL ID Act places exclusive review of orders of removal with circuit courts." (citation and quotation marks omitted)).  Consistent with the "sole and exclusive" language of § 1252(a)(5), § 1252(g) states that, except as otherwise provided by § 1252, "no court shall have jurisdiction to hear any cause or any claim by or on behalf of any alien arising from the decision or action by the [Secretary of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

Hillary has asked this Court to enjoin his removal and to "nullify" the voluntary departure order issued by the Immigration Judge.  His requests for relief and the arguments that he raises in support clearly "aris[e] from the decision" to execute his final order of removal.  *See Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017) ("A claim that is connected directly and immediately to a decision to execute a removal order arises from that decision." (citation and quotation marks omitted)).  Under the

plain language of § 1252(g), this Court lacks subject-matter jurisdiction to consider any of Hillary's claims.

Because the Court lacks subject-matter jurisdiction to consider any of Hillary's claims, the Court now vacates its prior order enjoining Hillary's removal, ECF No. 18, denies Hillary's emergency motion to halt deportation, ECF No. 14, and denies Hillary's motion to nullify his voluntary departure order, ECF No. 27.

ORDER

Based on the foregoing, and on all of the files and records herein, IT IS HEREBY ORDERED THAT:

1.    The Court's order enjoining respondents from deporting or removing petitioner [ECF No. 18] is VACATED.

2.    Petitioner's emergency motion to halt deportation [ECF No. 14] is DENIED.

3.    Petitioner's motion to nullify voluntary departure order of the Immigration Judge [ECF No. 27] is DENIED.

Dated:  April 21, 2020                      s/Patrick J. Schiltz
                                           Patrick J. Schiltz
                                           United States District Judge